1  T. Allen Chey Esq, State Bar No. 172096 (In Pro Per)
   Attorney at Law
2  Member of the State Bar of California
   1420 Victoria St, #804
3  Honolulu, HI 96822
   Telephone: (310) 882 0076
4

5

6                  UNITED STATES DISTRICT COURT

7                CENTRAL DISTRICT OF CALIFORNIA

8                        WESTERN DIVISION

9
   T. Allen Chey,                     )   Case No: CUl 3- 4859-R-AJW
10                                     )
              Plaintiff,               )   T. ALLEN CHEY'S COMPLAINT FOR
11                                     )   DAMAGES
      vs.                              )
12                                     )   1)  FRAUD AND DECEIT
                                       )   2)  INTENTIONAL
13                                     )       MISRESPRESENTATION
   NETLIX, Inc.                        )   3)  NEGLIGENT
14                                     )       MISREPRESENTATION
      Defendants                       )   4)  UNJUST ENRICHMENT
15                                         5)  COPYRIGHT INFRINGEMENT
                                           6)  INTENTIONAL INFLICTION OF
16                                             EMOTIONAL DISTRESS
                                           7)  NEGLIGENT INFLICTION OF
17                                             EMOTIONAL DISTRESS
                                           8)  INTERFERECE WITH
18                                             PROSPECTIVE BUSINESS
                                               ADVANTAGE
19

20  ──────────────────────────

21                   **DEMAND FOR A JURY TRIAL**

22
       Plaintiff, an individual, as for his Complaint against DEFENDANT NETFLIX, Inc,
23
   inclusive demands a jury trial and alleges as follows:
24

25                 **PARTIES AND JURISDICTION**

26

27

28



                        Complaint - 1

www.NorthwestRegisteredAgent.com

1) Plaintiff is a competent individual who resides at 1420 Victoria St, #804, Honolulu, HI 96822

2) Defendant Netflix, Inc is a company with its corporate headquarters located in 100 Winchester Cir. Los Gatos, CA, 95032 USA

3) At all times material hereto, Defendant was acting individually and/or through its agents, servants, and employees who were acting on its behalf and with the scope and course of its authority and employment.

4) Venue is proper in this Court under 28 USC §1332. Jurisdiction of this matter is conferred on this Court by virtue of damages in this case exceeding $75,000.00 and also diversity of citizenship.

## INTRODUCTION

5) It is a well-known fact in Hollywood that independent filmmakers and artists are constantly mistreated, scammed, and abused by film distributors of all sizes. This case takes the worst 'Scam-the-Artist' to a new low. Plaintiff believes it's time to fight back in the courts and prays for justice in the courts and in front of a fair jury and an honorable Judge.

6) Plaintiff is a well-known, award-winning writer/director who has produced and/or directed over nine feature films, including 'The Genius Club' (Stephen Baldwin, Tricia Helfer, Tom Sizemore), 'Fakin' Da Funk' (Pam Grier, Margaret Cho, Bo Jackson), 'Carry Me Home: The True Story of the Underground Railroad' (Cuba Gooding, Jr, William Sadler), and 'Suing the Devil' (Malcolm McDowell)

7) Plaintiff's film, 'Suing the Devil' starring legendary actor Malcolm McDowell ('Clockwork Orange') is about a man who sues the devil for $8 trillion dollars. On the

www.NorthwestRegisteredAgent.com

eve of filing for a default judgment, the devil shows up to defend himself. Representing the devil are eight of the world's best trial lawyers.

8) 'Suing the Devil' was the #1 faith-based movie in theaters in August 2011 (see Exhibit 1). The film was theatrically released in 8 cities, including St. Louis, Dallas, Houston, Jacksonville, Kansas City, Greensboro, Melbourne, and Evansville. The film was picked up by three prestigious distributors, including Warner Bros for VOD. Very few films make it to a theatrical release.

9) On Walmart's official On Demand site (Vudu.com), 'Suing the Devil' ranked in the Top 12 films out of more than 15,000 movies in the 'Top Picks' category.

10) 'Suing the Devil' also ranked in the Top 40 of the 'Most Watched' category out of 15,635 films.

11) 'Suing the Devil' also made it into all 33,000 Redboxes across the U.S. and into all Walmart chains.

12) The film also has 16,000 fans on Facebook and received close to 3 million impressions on Facebook and Google and the official site.

13) 'Suing the Devil' starring Malcolm McDowell, Corbin Bernsen, Rebecca St. James, and Tom Sizemore, won the highest 5-Dove Award for having no profanity, no violence, and no sex. The Dove Foundation, that issues the award, said the director hit a home run with the story and 'This is a movie which offers hope and inspiration. Every Christian should see it as should anyone who has ever faced the storms of life, which covers everyone. We award this film five Doves, our highest rating."

14) 'Suing the Devil' was also the #1 best-selling movie on ChristianCinema.com

15) Plaintiffs branded 'Suing the Devil' so well that it's ranks #1 on Google's listing for the word 'suing'. There are also over 50 pages on Google under 'Suing the Devil'. It was also in the Top 50 Most Anticipated Summer Films from Wired Magazine.

16) On or about August 2011, during the theatrical release, Plaintiff and his film team noticed Netflix put the film on its site with a 'SAVE' button, enticing it's customers, both old and new, to 'SAVE' the film.

www.NorthwestRegisteredAgent.com

17) What 'SAVE' means on Netflix, is when a film comes out on either DVD or streaming, that customer will get the film when it comes out later in the year.

18) Plaintiff believes this action hurt theatrical sales as customers stated on Facebook and in person that they would 'wait until it comes out on Netflix'.

19) Nonetheless, Plaintiff believed and relied on Netflix bringing in 'Suing the Devil' for DVD and VOD. Plaintiff alleges ten of thousands of potential customers viewed or knew that 'Suing the Devil' would be available on Netflix.

20) Plaintiff believes Netflix never intended to bring 'Suing the Devil' in although Plaintiffs believed fully otherwise.

21) Plaintiff alleges that Netflix purposefully and methodically uses the image of a filmmaker's work to bring that customer base in to sell their own subscription base thus deceiving the potential customers of 'Suing the Devil'.

22) On or about February 2012, Plaintiff signed a deal with a major VOD distributor which took it to Netflix over three times in the course of 13 months – each time Netflix passed.

23) On or about March 2012, Plaintiff signed a deal with a major faith-based distributor and they too took the film to Netflix for the DVD and again for streaming and again Netflix passed completely.

24) On or about April 2012, 'Suing the Devil' was victorious in getting into all 33,000 Redbox locations and all Walmart stores. In fact, another well-known faith-based distributor joined the team because of their strong belief in the film – it was the #1 faith-based film the week it was released

25) Plaintiff was extremely shocked when Netflix passed a final time on or about March 2013. The enormous damages are incalcuable at raw glance. This is due to the fact that so many customers would have bought the DVD or paid for VOD had the customers known it would not be available on Netflix.

26) In the most egregious act ever committed by a film distributor, Netflix caused perhaps hundreds of thousands of potential buyers of the film, 'Suing the Devil' to wait until the film came to Netflix, then Netflix passed on both carrying the DVD and Live Streaming.

www.NorthwestRegisteredAgent.com

27) Plaintiff believes the film would have paid back it's investment had it not been for Netflix's 'bait and dump' tactics.

28) Plaintiff, a Harvard and USC alumnus, and internationally-known film writer/director, was left with no alternative but to file this action in the wake of the most egregious, humiliating, discriminatory acts ever a film distribution company.

29) Plaintiff declares also that in his 47 years he has never been subjected to the type of horrific conduct of a film distributor as Netflix.

30) Plaintiff is also the producer, director, and co-host of a movie/TV show that traveled to 27 countries documenting important, true, and inspiring stories.

31) Plaintiff is filing this case to protect innocent filmmakers from having to go through what he endured.

32) Plaintiff asks the court for $10,000,000 minimum damages for each action and punitive damages against Netflix.

33) Plaintiff intends to file a Motion for Summary Judgment as litigation gets under way due to the obvious and complete victory Plaintiff will receive at trial. Plaintiff also intends to file a Motion to Allow Public Cameras and all Media (including TMZ, Variety, THR, The Wrap) into the courtroom. Plaintiff requests the court to expedite discovery at all ends and set a trial date for this year or early-2014.

## COUNT 1 – FRAUD AND DECEIT

34) Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

35) 'Suing the Devil' won the 5-star Dove Award and was the #1 faith-based movie in theaters in August 2011. The film was released in 8 cities, including St. Louis, Dallas, Houston, Jacksonville, Kansas City, Greensboro, Melbourne, and Evansville

36) The film also has 16,000 fans on Facebook and received close to 3 million impressions on Facebook and Google and the official site.

www.NorthwestRegisteredAgent.com

37) On or about August 2011, during the theatrical release, Plaintiff and his film team noticed Netflix put the film on its site with a 'SAVE' button, enticing it's customers, both old and new, to 'SAVE' the film.

38) What 'SAVE' means on Netflix, is when a film comes out on either DVD or streaming, that customer will get the film when it comes out later in the year.

39) Plaintiff alleges that Netflix purposefully and methodically uses the image of a filmmaker's work to bring that customer base in to sell their own subscription base thus deceiving the potential customers of 'Suing the Devil'.

40) On or about February 2012, Plaintiff signed a deal with a major VOD distributor and they took it to Netflix over three times in the course of 5 months – each time Netflix passed.

41) On or about March 2012, Plaintiff signed a deal with a major faith-based distributor and they too took the film to Netflix for the DVD and for streaming and again Netflix passed.

42) On or about April 2012, 'Suing the Devil' was victorious in getting into all 33,000 Redbox locations and all Walmart stores. In fact, another well-known faith-based distributor joined the team because of their strong belief in the film.

43) Plaintiff was shocked when Netflix passed a final time sometime on or around late February – early March 2013. The enormous damages are incalcuable at raw glance. This is because so many customers would have bought the DVD or paid for VOD had the customers known it would not be available on Netflix.

44) In fact, Plaintiff still has 'Suing the Devil' in his DVD Queue as of June 1, 2013 (see Exhibit 2)

45) On or about June 26, 2013, Plaintiff received a call from the legal department saying they took Plaintiff's film off of Netflix.

46) Plaintiff alleges that Netflix used his film to help attract new and old customers, then never brought the film in for reasons unknown.

47) Plaintiff states under the penalty of perjury that the film cost hundreds of thousands of dollars in lost expense, damages and incalcuable emotional distress caused by this deception on the part of Netflix.

www.NorthwestRegisteredAgent.com

48) Plaintiff alleges total fraud and deceit on the part of Netflix that they deceitfully pretended they were bringing in 'Suing the Devil' to countless and untold number of customers that will be brought out in depositions and interogatories and finally during the trial in front of a jury of 12 peers.

49) Plaintiff believes that Netflix knew they were not bringing in the title, yet still deceitfully have the title on their website.

50) Plaintiff asks the courts to allow a complete and thorough examination of all parties in this action, including the CEO and all officers at Netflix.

51) As a further, direct and proximate result of Defendants continue to suffer injury to its person and good will.

52) Plaintiff is irreparably harmed and punitive damages are sought to prevent Defendants from taking advantage of the public's ignorance in hoping to rent a wonderful family/faith-based film. Plaintiff seeks actual damages and punitive damages of no less than $10,000,000.

## COUNT 2 – INTENTIONAL MISREPRESENTATION

53) Plaintiff repeats and realleges each and every allegation contained in paragraphs 2 through 52 above as if fully set forth herein.

54) Plaintiff again alleges that Netflix purposefully misrepresented its website to it's customers and potential customers that they would carry 'Suing the Devil' when nothing could be further from the truth.

55) On or about August 2011, during the theatrical release, Plaintiff and his film team noticed Netflix put the film on its site with a 'SAVE' button, enticing it's customers, both old and new, to 'SAVE' the film.

56) What 'SAVE' means on Netflix, is when a film comes out on either DVD or streaming, that customer will get the film when it comes out later in the year.

57) On or about February 2012, Plaintiff signed a deal with a major VOD distributor and they took it to Netflix over three times in the course of 5 months – each time Netflix passed.

58) On or about March 2012, Plaintiff signed a deal with a major faith-based distributor and they too took the film to Netflix for the DVD and for streaming and again Netflix passed.

59) On or about April 2012, 'Suing the Devil' was victorious in getting into all 33,000 Redbox locations and all Walmart stores. In fact, another well-known faith-based distributor joined the team because of their strong belief in the film

60) Plaintiff was shocked when Netflix passed a final time. The enormous damages are incalcuable at raw glance. This is because so many customers would have bought the DVD or paid for VOD had the customers known it would not be available on Netflix.

61) Plaintiff alleges that Netflix is completely aware that many customers would be deceived by its mispresentations of carrying the film.

62) Plaintiff alleges that Netflix purposefully and methodicly uses the image of a filmmaker's work to bring that customer base in to sell their own subscription base thus deceiving the potential customers of 'Suing the Devil'. Thus there was intentional misrepresentation.

63) The policy of not telling customers is a 'hot-bed' waiting to explode. In this particular case, Netflix refused to carry Plaintiff's film. In fact again, Plaintiff actually still has 'Suing the Devil' in his DVD queue (see Exhibit 2)

64) Plaintiff has 'smoking-gun' evidence that Netflix knew of the massive confusion surrounding not carrying the film and the repercussions on DVD sales and and intentionally misrepresented they would carry the film to thousands of unsuspecting customers of Netflix and thousands of fans of 'Suing the Devil'.

65) Plaintiff is irreparably harmed and punitive damages are sought to prevent Defendants from taking advantage of the public's ignorance in hoping to rent a wonderful family/faith-based film. Plaintiff seeks actual damages and punitive damages of no less than $10,000,000.

www.NorthwestRegisteredAgent.com

## COUNT 3 – <u>NEGLIGENT MISREPRESENTATION</u>

66) Plaintiff repeats and realleges each and every allegation contained in paragraphs 2 through 65 above as if fully set forth herein.

67) On Walmart's official On Demand site (Vudu.com), 'Suing the Devil' ranked in the Top 12 films out of more than 15,000 movies in the 'Top Picks' category.

68) 'Suing the Devil' also ranked in the Top 40 of the 'Most Watched' category out of 15,635 films.

69) 'Suing the Devil', starring Malcolm McDowell, also made it into all 33,000 Redboxes across the U.S. and into all Walmart chains.

70) The film also had 16,000 fans on Facebook and received close to 2 million impressions on Facebook and Google and the official site.

71) 'Suing the Devil', starring Malcolm McDowell, won the highest 5-Dove Award for having no profanity, no violence, and no sex. The Dove Foundation, that issues the award, said the director hit a home run with the story and 'This is a movie which offers hope and inspiration. Every Christian should see it as should anyone who has ever faced the storms of life, which covers everyone. We award this film five Doves, our highest rating."

72) Plaintiff again alleges that Netflix purposefully misrepresented its website to it's customers and potential customers that they would carry 'Suing the Devil' when nothing could be further from the truth.

73) On or about August 2011, during the theatrical release, Plaintiff and his film team noticed Netflix put the film on its site with a 'SAVE' button, enticing it's customers, both old and new, to 'SAVE' the film.

74) What 'SAVE' means on Netflix, is when a film comes out on either DVD or streaming, that customer will get the film when it comes out later in the year.

75) On or about February 2012, Plaintiff signed a deal with a major VOD distributor and they took it to Netflix over three times in the course of 5 months – <u>each time Netflix passed.</u>

76) On or about March 2012, Plaintiff signed a deal with a major faith-based distributor and they too took the film to Netflix for the DVD and for streaming and again Netflix passed.

77) On or about April 2012, 'Suing the Devil' was victorious in getting into all 33,000 Redbox locations and all Walmart stores. In fact, another well-known faith-based distributor joined the team because of their strong belief in the film

78) Plaintiff was extremely angry when Netflix passed a final time. <u>The enormous damages are incalcuable at raw glance. This is because so many customers would have bought the DVD or paid for VOD had the customers known it would not be available on Netflix.</u>

79) Plaintiff alleges that Netflix is completely aware that many customers would be deceived by its intentional and negligent mispresentations of carrying the film.

80) The policy of not telling customers is a 'hot-bed' waiting to explode and shows negligent misrepresentation at it's very least. In this particular case, Netflix refused to carry Plaintiff's film. In fact again, Plaintiff actually still has 'Suing the Devil' in his DVD queue (see Exhibit 2)

81) Plaintiff has 'smoking-gun' evidence that Netflix knew of the massive confusion surrounding not carrying the film and the repercussions on DVD sales and did nothing about it.

82) Plaintiff is irreparably harmed and punitive damages are sought to prevent Defendants from taking advantage of the public's ignorance in hoping to rent a wonderful family/faith-based film. Plaintiff seeks actual damages and punitive damages of no less than $10,000,000.

## COUNT 4: UNJUST ENRICHMENT

83) Plaintiff repeats and realleges each and every allegation contained in paragraphs 2 through 82 above as if fully set forth herein.

84) By Netflix purposefully misrepresenting its website to it's customers and potential customers that they would carry 'Suing the Devil' it generated income by it's illegal expolitation of the film.

www.NorthwestRegisteredAgent.com

85) Plaintiffs through discovery and depositions plan to determine how many customers clicked on the link to 'Suing the Devil' on Netflix – Plaintiff believes it was in the thousands

86) On or about February 2012, Plaintiff signed a deal with a major VOD distributor and they took it to Netflix over three times in the course of 5 months – each time Netflix passed.

87) On or about March 2012, Plaintiff signed a deal with a major faith-based distributor and they too took the film to Netflix for the DVD and for streaming and again Netflix passed.

88) On or about April 2012, 'Suing the Devil' was victorious in getting into all 33,000 Redbox locations and all Walmart stores. In fact, another well-known faith-based distributor joined the team because of their strong belief in the film

89) On or about August 2011, during the theatrical release, Plaintiff and his film team noticed Netflix put the film on its site with a 'SAVE' button, enticing it's customers, both old and new, to 'SAVE' the film.

90) What 'SAVE' means on Netflix, is when a film comes out on either DVD or streaming, that customer will get the film when it comes out later in the year.

91) Plaintiff believes this action hurt theatrical sales as customers stated on Facebook and in person that they would 'wait until it comes out on Netflix'.

92) Nonetheless, Plaintiff believed and relied on Netflix bringing in 'Suing the Devil' for DVD and VOD. Plaintiff alleges ten of thousands of potential customers viewed or knew that 'Suing the Devil' would be available on Netflix.

93) Plaintiff believes Netflix never intended to bring 'Suing the Devil' in although Plaintiffs believed fully otherwise.

94) Plaintiff alleges that Netflix purposefully and methodically uses the image of a filmmaker's work to bring that customer base in to sell their own subscription base thus deceiving the potential customers of 'Suing the Devil'.

95) Plaintiff was extremely shocked when Netflix passed a final time. The enormous damages are incalcuable at raw glance. This is because so many customers would have

www.NorthwestRegisteredAgent.com

1    bought the DVD or paid for VOD had the customers known it would not be available on

2    Netflix.

3    *96)* Plaintiff alleges that Netflix is completely aware that many customers would be deceived

4    by its intentional and negligent mispresentations of carrying the film.

5    97) Plaintiff is irreparably harmed and punitive damages are sought to prevent Defendants

6    from taking advantage of the public's ignorance in hoping to rent a wonderful

7    family/faith-based film. Plaintiff seeks actual damages and punitive damages of no less

8    than $10,000,000.

9

10    ## COUNT 5:  COPYRIGHT INFRINGEMENT

11

12    *98)* Plaintiff restates and realleges each of the allegations contained in paragraphs 1-96

13    *99)* Plaintiff has all rights, titles, and interest in the copyright to each poster image at issue as

14    holder of the copyright, the use of which has not been in any way licensed to Defendants

15    *100)*    Defendants have misappropriated Plaintiff's copyrighted work for 'Suing the

16    Devil' motion picture with complete and total knowledge that the work at issue did not

17    belong to Netflix and Netflix made no attempt to obtain permission or license from

18    anyone;

19    *101)*    Defendants thereby willfully engaged in unauthorized use and copying of

20    Plaintiff's work, images, writings, posters in their 'zeal' to grab more customers

21    aggressively keeping ahead of the competition

22    *102)*    Netflix's acts constitute willful copyright infringement .

23    *103)*    Netflix has demonstrated that they will continue, unless restrained, to use

24    Plaintiff's copyrighted works, causing and already have caused enormous and irreparable

25    damage to Plaintiff, for which Plaintiff has no adequate remedy of law

26    *104)*    Netflix's unlawful use of Plaintiff's original work without license catastrophically

27    dimished the value of the motion picture 'Suing the Devil' to sell DVDs and Blu-rays at

28    Walmart, Amazon.com, Family Christian, Bridgestone Media, Warner Bros streaming,

www.NorthwestRegisteredAgent.com

1    etc. Netflix, in essence, diulted the Plaintiff's ability to sell the DVD as most buyers

2    'waited' for Netflix to carry the film

3    *105)*    Netflix's unlawful, fraudulent and deceitful acts have been completely interfering

4    with and undermining the value of the film and completely have annihilate Plaintiff's

5    ability to market the film. Period.

6    *106)*    Plaintiff is entitle to a preliminary and permanent injunction restraining Netflix

7    from engagin in further acts of copyright infringement

8    *107)*    Netflix, by it's unauthorized use of Plaintiff's work are engaging in acts of unfair

9    competition, unlawful appropriation, unjust enrichment, wrongful deception of the

10   purchasing DVD buyers, and unlawful trading of Plaintiff's enormous 3 year effort to

11   bring a worthy faith-based, family film with a strong message to the public.

12   *108)*    As a direct and proximate result of Netflix's wrongful acts, Plaintiff has suffered

13   and continues to suffer lost profits and damages. Plaintiff believes he has been damaged

14   to the amount over $10 million.

15

16   **COUNT 6 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

17

18   109)    Plaintiff repeats and realleges each and every allegation contained in paragraphs 2

19   through 108 above as if fully set forth herein.

20   110)    Plaintiff again alleges that Netflix purposefully misrepresented its website to it's

21   customers and potential customers that they would carry 'Suing the Devil' when nothing

22   could be further from the truth.

23   111)    On or about August 2011, during the theatrical release, Plaintiff and his film team

24   noticed Netflix put the film on its site with a 'SAVE' button, enticing it's customers, both

25   old and new, to 'SAVE' the film.

26   112)    What 'SAVE' means on Netflix, is when a film comes out on either DVD or

27   streaming, that customer will get the film when it comes out later in the year.

28

Complaint - 13

www.NorthwestRegisteredAgent.com

113)    On or about February 2012, Plaintiff signed a deal with a major VOD distributor and they took it to Netflix over three times in the course of 5 months – each time Netflix passed.

114)    On or about March 2012, Plaintiff signed a deal with a major faith-based distributor and they too took the film to Netflix for the DVD and for streaming and again Netflix passed.

*115)*   On or about April 2012, 'Suing the Devil' was victorious in getting into all 33,000 Redbox locations and all Walmart stores. In fact, another well-known faith-based distributor joined the team because of their strong belief in the film

*116)*   Plaintiff was extremely shocked when Netflix passed a final time. The enormous damages are incalcuable at raw glance. This is because so many customers would have bought the DVD or paid for VOD had the customers known it would not be available on Netflix. This misrepresentation, fraud and deceit, and unjust enrichment caused enormous stress to Plaintiff

*117)*   Plaintiff alleges that Netflix is completely aware that many customers would be deceived by its mispresentations of carrying the film.

*118)*   The policy of not telling customers is a 'hot-bed' waiting to explode. In this particular case, Netflix refused to carry Plaintiff's film. In fact again, Plaintiff actually still has 'Suing the Devil' in his DVD queue (see Exhibit 1)

*119)*   Plaintiff has 'smoking-gun' evidence that Netflix knew of the massive confusion surrounding not carrying the film and the repercussions on DVD sales and did nothing about it.

*120)*   Plaintiff was severely traumatized and experienced extreme emotional distress as he had to repay his investors some money and everyone believed that Netflix would carry the film

*121)*   Plaintiff is irreparably harmed and punitive damages are sought to prevent Defendants from taking advantage of the public's ignorance in hoping to rent a wonderful

www.NorthwestRegisteredAgent.com

family/faith-based film. Plaintiff seeks actual damages and puntive damages for this cause of action of an undetermined amount.

## COUNT 7 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

122)   Plaintiff repeats and realleges each and every allegation contained in paragraphs 2 through 121 above as if fully set forth herein.

123)   Plaintiff again alleges that Netflix purposefully misrepresented its website to it's customers and potential customers that they would carry 'Suing the Devil' when nothing could be further from the truth.

124)   On or about August 2011, during the theatrical release, Plaintiff and his film team noticed Netflix put the film on its site with a 'SAVE' button, enticing it's customers, both old and new, to 'SAVE' the film.

125)   What 'SAVE' means on Netflix, is when a film comes out on either DVD or streaming, that customer will get the film when it comes out later in the year.

126)   On or about February 2012, Plaintiff signed a deal with a major VOD distributor and they took it to Netflix over three times in the course of 5 months – each time Netflix passed.

127)   On or about March 2012, Plaintiff signed a deal with a major faith-based distributor and they too took the film to Netflix for the DVD and for streaming and again Netflix passed.

128)   On or about April 2012, 'Suing the Devil' was victorious in getting into all 33,000 Redbox locations and all Walmart stores. In fact, another well-known faith-based distributor joined the team because of their strong belief in the film. On Walmart's official On Demand site (Vudu.com), 'Suing the Devil' ranked in the Top 12 films out of more than 15,000 movies in the 'Top Picks' category.

129)   'Suing the Devil' also ranked in the Top 40 of the 'Most Watched' category out of 15,635 films.

www.NorthwestRegisteredAgent.com

130) Plaintiff was extremely angry when Netflix passed a final time. The enormous damages are incalcuable at raw glance. This is because so many customers would have bought the DVD or paid for VOD had the customers known it would not be available on Netflix.

131) Plaintiff alleges that Netflix is completely aware that many customers would be deceived by its mispresentations of carrying the film.

132) The policy of not telling customers is a 'hot-bed' waiting to explode. In this particular case, Netflix refused to carry Plaintiff's film. In fact again, Plaintiff actually still has 'Suing the Devil' in his DVD queue (see Exhibit 1)

133) Plaintiff has 'smoking-gun' evidence that Netflix knew of the massive confusion surrounding not carrying the film and the repercussions on DVD sales and did nothing about it.

134) Plaintiff was severely traumatized and experienced extreme emotional distress as he had to repay his investors some money and everyone believed that Netflix would carry the film. Netflix, at the very least, negligently caused this trauma.

135) Plaintiff is irreparably harmed and punitive damages are sought to prevent Defendants from taking advantage of the public's ignorance in hoping to rent a wonderful family/faith-based film. Plaintiff seeks actual damages and puntive damages for this cause of action of an undetermined amount.


## COUNT 8 – INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE


136) Plaintiff repeats and realleges each and every allegation contained in paragraphs 2 through 135 above as if fully set forth herein.

137) 'Suing the Devil' won the 5-star Dove Award and was the #1 faith-based movie in theaters in August 2011. The film was released in 8 cities, including St. Louis, Dallas, Houston, Jacksonville, Kansas City, Greensboro, Melbourne, and Evansville

www.NorthwestRegisteredAgent.com

*138)*      The film also has 16,000 fans on Facebook and received close to 3 million impressions on Facebook and Google and the official site.

*139)*      On or about August 2011, during the theatrical release, Plaintiff and his film team noticed Netflix put the film on its site with a 'SAVE' button, enticing it's customers, both old and new, to 'SAVE' the film.

*140)*      What 'SAVE' means on Netflix, is when a film comes out on either DVD or streaming, that customer will get the film when it comes out later in the year.

*141)*      On or about February 2012, Plaintiff signed a deal with a major VOD distributor and they took it to Netflix over three times in the course of 5 months – each time Netflix passed.

*142)*      On or about March 2012, Plaintiff signed a deal with a major faith-based distributor and they too took the film to Netflix for the DVD and for streaming and again Netflix passed.

*143)*      On or about April 2012, 'Suing the Devil' was victorious in getting into all 33,000 Redbox locations and all Walmart stores. In fact, another well-known faith-based distributor joined the team because of their strong belief in the film.

*144)*      Plaintiff was extremely angry when Netflix passed a final time sometime on or around late February – early March 2013. The enormous damages are incalcuable at raw glance. This is because so many customers would have bought the DVD or paid for VOD had the customers known it would not be available on Netflix.

*145)*      In fact, Plaintiff still has 'Suing the Devil' in his DVD Queue as of June 1, 2013 (see Exhibit 2)

*146)*      Plaintiff alleges that Netflix used his film to help attract new and old customers, then never brought the film in for reasons unknown.

147)      Plaintiff states under the penalty of perjury that the film cost hundreds of thousands of dollars in lost expense, damages and incalcuable emotional distress caused by a complete breakdown in customer service.

www.NorthwestRegisteredAgent.com

148) Plaintiff alleges total fraud and deceit on the part of Netflix that they deceitfully pretended they were bringing in 'Suing the Devil' to countless and untold number of customers that will be brought out in depositions and interogatories and finally during the trial in front of a jury of 12 peers.

149) Plaintiff believes that Netflix knew they were not bringing in the title, yet still deceitfully have the title on their website.

150) Plaintiff asks the courts to allow a complete and thorough examination of all parties in this action, including the CEO and all officers at Netflix.

151) As a further, direct and proximate result of Defendants continue to suffer injury to its person and good will.

152) Plaintiff believes he was injured extraordinarily of his prospective business because of Netflix deceiving the public into believing they could rent the film on their site instead of buying the DVD/Blu-Ray from Plaintiff. The window of opportunity to sell is very small – Netflix knew this.

153) Plaintiff is irreparably harmed and punitive damages are sought to prevent Defendants from taking advantage of the public's ignorance in hoping to rent a wonderful family/faith-based film. Plaintiff seeks actual damages and punitive damages of at least $10,000,000

## DAMAGES

1. **DEMAND FOR A FULL AND UNCONDITIONAL JURY TRIAL**
2. **Demand for COURT TV, NBC, FOX, VARIETY, THR, TMZ, and any media outlets to cover the trial to prevent other innocent people from going through what Plaintiff went through;**
3. **For general damages which, to the extent possible, will put Plaintiff in the position it would have been but for Defendant's grevious conduct, all according to proof at trial, but in excess of the jurisdictional minimum of this Court.**
4. **Expenses, fees, and costs of suit incurred herein, including all attorney's fees;**

www.NorthwestRegisteredAgent.com

5.  For damages, both punitive and actual;

6.  For prejudgment or other award at the maximum rate permitted by law;

DATED: July 5, 2013

BY _____

T. Allen Chey, Esq

Attorney At Law

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| T. Allen Chey | Netflix |

| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>T. Allen Chey<br>1420 Victoria St, #804<br>Honolulu, HI 96822 | **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 10,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fraud and Deceit, Intentional and Negligent Misrepresentation, Unjust Enrichment, Interference with Prospective business Advantage under 28 USC §1332

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: _____

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

CV 13-4859

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| SAN FRANCISCO | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| HONOLULU | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Honolulu, HI  CA | CA |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note: In land condemnation cases, use the location of the tract of land involved**

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):**                                DATE: 2/5/13

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV13- 4859 R (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

_____

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

_____

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY